UNITED STATES DISTRICT COURT
                         DISTRICT OF MAINE

UNITED STATES OF AMERICA    )
                            )
v.                          )         No. 2:10-cr-136-DBH
                            )         **REDACTED**
DANEEK MILLER,              )
                            )
       Defendant            )


              RECOMMENDED DECISION ON DEFENDANT'S
                  COMPETENCY TO STAND TRIAL[1]


       On December 6, 2010, I granted the defendant's unopposed motion for a mental examination pursuant to 18 U.S.C. § 4241 to determine whether he was competent to stand trial. *See* Docket Nos. 270, 278. For the reasons that follow, I now recommend that the court find the defendant competent to stand trial.

                              **I. Background**

       The defendant was referred to the Federal Medical Center in Devens, Massachusetts ("FMC-Devens"), where he was evaluated from December 17, 2010, through January 16, 2011. *See* Forensic Report of Miriam Kissin, Psy.D., dated February 4, 2011 ("Kissin Report"), Gov't Exh. 1, at 1. On or about February 9, 2011, I received the report dated February 4, 2011, of FMC-Devens forensic psychologist Miriam Kissin, Psy.D. Dr. Kissin diagnosed the defendant with [**REDACTED**]. *See id.* at 11.

       [**REDACTED**.] She concluded that the defendant's "competency-related skills are not significantly compromised by symptoms of a serious mental illness or defect, such that he would

---

[1] In redacting this Recommended Decision, I have deleted section V, which provided the parties a chance to seek redactions of portions of the instant decision prior to its unsealing. A motion for redactions was filed, *see* Docket No. 374, which I granted in part today, *see* Docket No. 375.

                                    1

be unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id*. at 13.

On March 10, 2011, I presided over a hearing pursuant to 18 U.S.C. §§ 4241(c) and 4247(d) during which the defendant, his counsel, and counsel for the government were present. Dr. Kissin testified, and the government introduced three exhibits, all of which were admitted without objection: (i) the Kissin Report, (ii) Dr. Kissin's *curriculum vitae*, and (iii) underlying reports, materials, and notes from Dr. Kissin's file.

At the conclusion of the hearing, counsel for the government argued in favor of a finding of competency to stand trial, asserting that, as noted by Dr. Kissin, the defendant's behavior is "volitional" and, thus, he was not prevented by a mental disease or defect from cooperating with counsel but, rather, had chosen not to do so. Counsel for the defendant argued against a finding of competency, stating that Dr. Kissin's report and testimony and other evidence reveal that the defendant's personality disorder renders him incapable of controlling the behaviors that undermine his ability to consult effectively with counsel or understand the proceedings against him, and that he is unlikely to cease those behaviors without significant effort and/or therapeutic intervention.

I directed counsel to file simultaneous briefs by March 31, 2011, on the question of whether, as a matter of law, a personality disorder can constitute a "mental disease or defect" for purposes of 18 U.S.C. § 4241. Reply briefs, if any, were to be filed by April 7, 2011. Both parties timely filed initial briefs. *See* Government's Memorandum Relating to Defendant Miller's Competency ("Government's Post-Hearing Brief") (Docket No. 346); Defendant's Memorandum of Law in Support of His Position That He is Not Competent To Stand Trial

("Defendant's Post-Hearing Brief") (Docket No. 347). Neither side filed a responsive brief. *See generally* ECF Docket.

## II. Applicable Legal Standards

"Due process requires that a defendant be mentally competent to be tried, convicted or sentenced." *United States v. Sanchez-Ramirez*, 570 F.3d 75, 80 (1st Cir. 2009). The district court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). To be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of understanding – and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted). Determining a defendant's competency is "often a difficult [question] in which a wide range of manifestations and subtle nuances are implicated." *Drope v. Mississippi*, 420 U.S. 162, 180 (1975).

"If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d).

## III. Discussion

With the benefit of Dr. Kissin's report and testimony, the other evidence adduced at hearing, and counsel's post-hearing memoranda, I conclude, and recommend that the court find,

that it is shown by a preponderance of the evidence that the defendant is competent to stand trial. Specifically, I conclude that:

1.  The fact that Dr. Kissin has diagnosed the defendant with an Axis II personality disorder is not, in itself, dispositive.[2] Insofar as appears, the First Circuit has not had occasion to consider whether a personality disorder can constitute a "mental disease or defect," and cases from other jurisdictions, some of which rely on experts' opinions on the point, are split. *Compare, e.g., United States v. Rosenheimer*, 807 F.2d 107, 112 (7th Cir. 1986) (affirming lower court decision, based on expert testimony, that "the defendant did not suffer from any mental disease or defect, but rather from a narcissistic personality disorder which is separate and distinct from suffering from a mental disease or defect"); *United States v. Van Hoesen*, No. 06-CR-394 (GLS-DRH), 2008 WL 4283419, at *2 (N.D.N.Y. Sept. 16, 2008) (observing that no party disputed the legal conclusion that "a personality disorder is not normally a mental disease rendering a defendant incompetent"); *United States v. Diehl Armstrong*, No. 1:07cr26, 2008 WL 2963056, at *26-*27 (W.D. Pa. July 29, 2008) (accepting uncontroverted expert testimony that Axis II conditions such as personality disorders, learning disabilities, intellectual dysfunction, and the like are not technically considered a mental illness and typically are not responsive to medication) *with United States v. Salley*, No. 01 CR 0750, 2004 WL 170322, at *3 & n.4 (N.D. Ill. Jan. 16, 2004) (diagnosis of narcissistic personality disorder did not *per se* rule out finding of incompetency to stand trial; DSM-IV categories are not bright-line indicators of the presence or absence of mental disease or defect); *United States v. Mooney*, 123 F. Supp.2d 442, 443 (N.D. Ill. 2000) ("[E]ven if Mooney's diagnosis were properly to be labeled as a 'personality disorder' in paper terms . . ., Mooney's real-life manifestations of his condition – spontaneous violent

---

[2] [**REDACTED**.]

outbursts that escalate into clearly uncontrollable rage and physical violence – have unquestionably rendered him just as incapable of effective participation in his defense as if he were suffering from the most serious type of mental disease. . . . [A]ny such tyranny of labels is inappropriate here."); *United States v. Henley*, 8 F. Supp.2d 503, 505-06 (E.D.N.C. 1998) (better-reasoned caselaw and legislative history of Insanity Defense Reform Act of 1984 suggest that the term "mental disease or defect" may sometimes include antisocial personality disorders).

      2.     In my view, the better and more well-reasoned approach is to consider on a case-by-case basis whether a given personality disorder renders a defendant "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[,]" 18 U.S.C. § 4241(a), rather than to judge this potentially nuanced issue on the basis of diagnostic label alone, *see, e.g., United States v. Murdoch*, 98 F.3d 472, 478 (9th Cir. 1996) ("The courts have expressed reluctance in relying on medical categories and labels in determining the limits of legal insanity. Such reluctance is warranted. What definition of 'mental disease or defect' is to be employed by the courts enforcing the criminal law is, in the final analysis, a question of legal, moral and policy – not of medical – judgment. . . . Thus, it is not enough that Appellant suffers from a condition to which a psychiatric label has been attached. Likewise, it is of no significance that one witness, Dr. Saint Martin, testified that a personality disorder is not considered a mental disease or defect in the psychiatric literature.") (Wilson, J., concurring) (footnote, citations, and internal quotation marks omitted).[3]

---

[3] The government does not take the position that a diagnosis of personality disorder in itself precludes a finding that a defendant is suffering from a "mental disease or defect." *See* Government's Post-Hearing Brief at 2. Rather, the government suggests that the court need not reach the issue because the personality disorder at issue here does not render the defendant incompetent. *See id*. I have reached the issue because it is a threshold, potentially dispositive legal issue in the case.

3. To the extent that the defendant's conduct nonetheless fairly can be characterized as "volitional," he does not suffer from a mental disease or defect that *renders him unable* to assist properly in his defense. *See, e.g., United States v. Jackson*, No. CRIM. 03-173-04, 2005 WL 2495847, at *7-*8 (E.D. Pa. Oct. 7, 2005) (finding defendant competent when preponderance of evidence, including three of four expert reports, showed that he was choosing not to participate in his own defense, *i.e.*, engaging in volitional conduct designed to advance his own purposes, however ill-advised); *Salley*, 2004 WL 170322, at *5 (finding defendant competent in circumstances in which two experts were "firm in their beliefs that defendant [who had a severe personality disorder] presently has the volitional ability to cooperate with counsel but chooses not to do so"); *United States v. Rivera*, No. 90 CR 1001-1, 1995 WL 20452, at *5 (N.D. Ill. Jan. 12, 1995) (finding defendant, who suffered, *inter alia*, from depression, competent when evidence, including that of expert, showed that he was capable of effectively communicating with his attorneys and assisting in the planning of his defense but simply chose not to do so).

4. The defendant is engaging in behaviors that undermine his relationship and cooperation with his attorney and his ability to participate in court proceedings. *See, e.g.*, Kissin Report at 12 ("Most recently, [the defendant] has repeatedly exhibited acting out and self-harming behaviors in the context of avoiding requests to discuss his criminal case, and continues to be unwilling to engage in discussion about his charges.").

5. These episodes include an incident on November 18, 2010, when, while the defendant was being interviewed by his former attorney at Strafford County Jail in Dover, New Hampshire, he hit his head on the wall and fell to the floor, *see id.* at 7; Strafford County Jail mental health note dated November 18, 2010, contained in Gov't Exh. 3, and an incident when,

on the sole occasion that the defendant's current attorney visited him for a jail interview, the defendant participated appropriately until the conversation turned to the instant criminal case, whereupon he began to murmur, hit himself in the face, pushed the table out of the way, and banged on the window, causing the defendant's attorney sufficient discomfort that he abruptly terminated the visit and was reluctant to return for a second interview attempt, *see id*. at 12.

6. Dr. Kissin herself did not succeed in interviewing the defendant regarding his understanding of the charges pending against him and general criminal trial procedures. When, on January 13, 2011, she attempted to interview him on those subjects, he stated, "I don't want to talk about court[,]" and a "dazed and distant look then came over his face." *Id*. at 8. He was sent back to his unit. *See id*. According to staff accounts, about 45 minutes later, he approached the unit officer stating that he needed medication, after which he began to punch himself with his fists and fell to the floor. *See id*. When, on January 19, 2011, Dr. Kissin made another attempt to interview the defendant regarding his competency-related skills, he answered "I don't know" to all questions posed to him, again presenting with "a dazed look on his face" and stating that he had been hearing voices telling him, among other things, to "eat doodle (his feces)." *Id*.

7. These behaviors are part of a longstanding behavior pattern. [**REDACTED**.]

8. In Dr. Kissin's view, "[i]n light of the historically adaptive nature of these behaviors . . . and the characterological foundation of their manifestation, it is unlikely [the defendant] will discontinue these problematic behaviors without significant motivation to act ortherwise." *Id*. at 12. She added, "without significant motivation to alter his conduct, [his] prognosis for refraining from these behaviors and pursuing a behavior pattern more conducive to participation in his legal case is poor." *Id*. While, in her view, the defendant might "benefit from engaging in psychotherapy aimed at helping him understand his problematic behavior

7

patterns[,] . . . in light of his poor response to past treatment efforts and the characterological nature of his problems, the prognosis for a positive treatment outcome is poor." *Id*.[4]

9. Nonetheless, while, in Dr. Kissin's view, the defendant's "acting out behaviors will likely continue to undermine his relationship and cooperation with his attorney, as well as participation in court proceedings, it is important to note that it is predicated on goal-directed and volitional behaviors, rather than a major mental illness." *Id*. She indicated that, although the defendant could not be formally interviewed regarding his competency-related skills, "there is no indication that he suffers from any significant mental illness that prevents him from understanding his charges, discussing his case with his attorney, and participating with making decisions regarding his case with his attorney's assistance." *Id*. at 13.[5]

10. There is, admittedly, a seeming tension in Dr. Kissin's views. On the one hand, as defense counsel argued, she indicated that the defendant cannot be expected to alter his longstanding dysfunctional behavior pattern absent significant motivation to do so and/or significant effort, including therapeutic intervention. On the other hand, she repeatedly described his conduct, both in her report and during hearing, as "volitional."

11. I conclude, and recommend that the court find, based on a preponderance of the evidence, that the defendant's conduct is indeed volitional and, thus, that he is competent to stand trial. Dr. Kissin's report and testimony are not so internally inconsistent, and her opinion

---

[4] In response to questions from defense counsel at hearing, Dr. Kissin agreed that (i) it is unknown how much time it might take the defendant to adjust or change his behavior pattern, (ii) simply telling him to stop the behavior does not seem to work, and (iii) the behavior pattern is a sufficiently deep, longstanding part of his character that it would take time, effort, and an effective program for him to no longer manifest this kind of behavior. In response to a question from the government's counsel, however, she clarified that she did not focus on spelling out a treatment plan or options for the defendant. She also stated that family and friends could be helpful in motivating the defendant differently.

[5] Dr. Kissin further stated that, although the defendant might require some additional explanations and reiterations of legal concepts and options as a result of his cognitive limitations, those limitations were not of such a degree as to preclude him from actively engaging in case proceedings, understanding the basic premise of the charges he faces, the available evidence, and potential implications, or from working with his lawyer toward a desired outcome. *See* Kissin Report at 13.

regarding the volitional nature of the conduct is not so implausible, as to warrant disregard of the sole expert opinion before the court on the dispositive question of whether the behavior at issue is volitional.

12. Dr. Kissin points to abundant evidence that, when not responding to perceived stressors, the defendant is capable of controlling his behavior and interacting appropriately and cooperatively with others. *See, e.g., id*. at 7 (defendant remained on the open unit at Strafford County Jail from December 21, 2010, to January 13, 2011, without incident, interacting appropriately with peers and staff, demonstrating no disruptive or bizarre behavior, and receiving no incident reports for infractions of institutional rules), 7-8 (defendant was cooperative in interviews with Dr. Kissin and in testing), 8 (defendant reported that he was able "to hold it together" for his mother and small son when they visited him in jail and "can't tell them this stuff"), 9 (once requests to discuss his legal case were discontinued, the defendant "continued to remain in behavioral control, without noted problematic behaviors"). *See also* Strafford County Jail mental health note dated December 10, 2010, contained in Gov't Exh. 3 (while defendant acknowledged that he had "episodes" with his girlfriend, he stated, "never around the baby"),

13. Further, Dr. Kissin noted, the defendant's "thought process was logical and goal directed, without evidence of delusional ideas or other thought disorder." Kissin Report at 9.

14. In these circumstances, Dr. Kissin reasonably concluded that, "when presented with a stressor, [the defendant] appears to utilize *volitional acting out behaviors* as a means of avoiding the need to take on and manage emerging problems and frustrations." *Id*. at 10 (emphasis added).

15. The defendant emphasizes, *inter alia*, that Dr. Kissin described his personality disorder as "characterological," that is, part of who he is, and that she could not opine as to when

he could achieve the ability to deal with stress. *See* Defendant's Post-Hearing Brief at [4]. However, it bears noting that Dr. Kissin described the key determinant in changing the defendant's behavior as a "significant motivation" to do so. *Id*. at 12. This, too, is consistent with a finding that the problematic behavior is volitional.[6]

16. On the difficult question of whether a personality disorder is of sufficient severity as to render a defendant's behavior non-volitional, the *Salley* case is instructive. Despite the court's own misgivings, it accepted the opinion of two experts that the defendant, who suffered from a severe personality disorder and had initially been found incompetent, had been restored to competency despite his likely continuing noncooperation with counsel. *See Salley*, 2004 WL 170322, at *1-*2, *5. The court observed:

> Although the court continues to have considerable doubt that defendant has the present ability to assist properly in his defense, the evidence before the court is to the contrary. The court is not a mental health professional and, therefore, must rely on the expert opinions in the record as to whether defendant has a mental disease or defect that interferes with his ability to cooperate with counsel. Both Dr. Weaver and Dr. Roesch are firm in their beliefs that defendant presently has the volitional ability to cooperate with counsel but chooses not to do so. There is also evidence that defendant, in fact, had discussions with [counsel] and did cooperate with them until each did something that displeased him. Defendant's refusal to continue in cooperation could be viewed as volitional if one accepts that his conduct stems from misunderstanding the role of an attorney rather than from delusional, narcissistic or paranoid thought processes rooted in a mental disease or defect.

*Id*. at *5. In like vein, Dr. Kissin testified in effect that, while the defendant's behavior pattern is "characterological" and ingrained, his current acting-out behavior stems from a desire to avoid the consequences of the criminal charges against him.[7]

---

[6] Dr. Kissin also testified at hearing, in response to questions from the government's counsel, that she believed that the defendant engaged in disruptive behaviors because they got him what he wanted, and in this case he wants to avoid the consequences of the current charges. She described him as unwilling (as opposed to unable) to confer with counsel.

[7] Although Dr. Roesch agreed that the defendant was unable to put sufficient trust in counsel for counsel to represent him, he stated that this was a free choice made by the defendant in light of his experiences with his attorneys in the
(*continued on next page*)

## IV. Conclusion

For the foregoing reasons, I recommend that the court find the defendant competent to stand trial.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of May, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

case rather than the product of a delusion or other mental disorder. *See Salley*, 2004 WL 170322, at *3. Interestingly, Dr. Weaver made statements that could be construed as indicating that the defendant was unable, as a result of his severe personality disorder, to cooperate with counsel: that the defendant's "personality type is going to cause him to continue to have problems with his attorney. . . . Unless he is assigned an attorney who is willing to do exactly as he requests, he will assume the person does not have his best interests in mind. His behavior is characteristic of people with severe personality disorders. [He] is so self-absorbed that he is not able to see any viewpoint except his own." *Id*. at *2. Like Dr. Kissin, however, Dr. Weaver was firm in her belief that the defendant's uncooperative conduct was "volitional." *See id*. at *5.