**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | No. 2:10-cr-136-DBH-02 |
| | ) | |
| **DANEEK MILLER,** | ) | |
| **Defendant** | ) | |

**ORDER AFFIRMING RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

On May 10, 2011, the United States Magistrate Judge filed with the court, with copies to counsel, his Recommended Decision on Defendant's Competency to Stand Trial. (Docket Item 369). The defendant filed his objection to the Recommended Decision on June 3, 2011. (Docket Item 383). I have reviewed and considered the Recommended Decision, together with the entire record, including the hearing transcript and the Bureau of Prisons psychologist's report; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in the Recommended Decision, and determine that no further proceeding is necessary.

With respect to the primary issue—the defendant's ability to assist properly in his defense by consulting with his lawyer—I certainly understand defense counsel's concerns about the difficulties of communicating with his

client and preparing the case for trial or other disposition. But the psychologist reached an unequivocal conclusion that the defendant's "competency-related skills are not significantly compromised by symptoms of a serious mental illness or defect, such that he would be unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Forensic Report of Miriam Kissin, Psy.D., dated February 4, 2011 ("Kissin Report"), Gov't Ex. 1, at 13.

What concerns defense counsel is what the defendant did on the sole occasion he met with him, what he did with a previous lawyer, and what he did with the BOP's forensic psychologist. According to the psychologist, when current counsel attempted to discuss the case with the defendant, the defendant "hit himself in the face, pushed the table out of the way and banged on the window." Recommended Dec. at 7. The lawyer then terminated the interview. Id. With the earlier lawyer, he hit his head on the wall and fell to the floor. Id. Similarly, the BOP psychologist could not conduct a "formal interview regarding his competency-related capacities" because the defendant "interrupted the process by engaging in acting out behaviors." Kissin Report at 13.

But the psychologist found that these behaviors are not caused by serious mental disease or defect, but instead are the latest in "a long-standing, documented history of volitional acting out behaviors. These behaviors are intended to aid him in avoiding unpleasant experiences, consequences and situations." Id. at 12. The psychologist found that the behaviors were "historically adaptive" and unlikely to be discontinued "without significant

2

motivation to act otherwise. While his acting out behaviors will likely continue to undermine his relationship and cooperation with his attorney, as well as participation in court proceedings, it is important to note that it is predicated on goal-directed and volitional behaviors, rather than a major mental illness." Id.

I am aware of the difficulty in making such distinctions (volitional vs. mental disease or defect) as neuroscience reveals more about how the brain actually works. And here the psychologist was candid that she did not know how to stop these behaviors on the defendant's part that have come to have a "characterological foundation." Id. But given the language Congress has used (requiring a finding "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," 18 U.S.C. § 4241(d)), and the fact that this defendant can behave appropriately when the incentives motivate him (such as when dealing with his young son and his mother[1] or when discussing matters apart from his criminal charges[2]), I conclude that he does not meet the statutory standard of

---

[1] According to the testimony of the psychologist:
> He had a visit over the weekend with his mother and his son, and when he was asked how—how he was able to manage with them and not have problems there where he was having problems on the unit, he stated that he had to hold it together for them, he can't discuss these kind of things or behave in those kind of ways with them.

Hr'g Tr. at 51 (Docket Item 386).

[2] According to the testimony of the psychologist:
> He was willing to sit down and speak to me about his background, history, about how he's doing currently while at our

*(continued next page)*

incompetence to stand trial. See United States v. Salley, 2004 WL 170322 (N.D. Ill. Jan. 16, 2004) (Lefkow, J.).[3]

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED**. I find the defendant competent to stand trial.

**SO ORDERED.**

**DATED THIS 29TH DAY OF JUNE, 2011**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

institution. He was friendly appropriate during these meetings. It changed only in the context of when the conversation turned to his legal matter and when I tended to interview him relating to competency-related skills.

Hr'g Tr. at 57.

[3] Like the parties and the Magistrate Judge, I find it unnecessary to decide whether something labeled a "personality disorder" rather than "mental disease or defect" can ever suffice. Instead, I conclude here that whatever the label, the defendant's condition does not meet the standard.